UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROBERT BORRELLI,                                    Docket No.:

                                 Plaintiff,
                                                        **COMPLAINT**

       -against-

CITY OF NEW YORK, THOMAS BARRETT, *in his*      **JURY TRIAL DEMANDED**
*individual and official capacities*, JAMES DODD, *in*
*his individual and official capacities*, and SCOTT
OLEXA, *in his individual and official capacities*,

                                Defendants.
-------------------------------------------------------------------X

       Plaintiff, ROBERT BORRELLI, by and through his attorneys, the Law Office of BORRELLI & ASSOCIATES, P.L.L.C., complaining of Defendants herein, alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

       1.     This is an action for monetary damages and injunctive relief against Defendants, their agents and employees, for committing acts under color of law and depriving Plaintiff of rights secured by the Constitution and laws of the United States of America and the State of New York.

## JURISDICTION AND VENUE

       2.     This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1988, the First and Fourteenth Amendments to the United States Constitution, and pursuant to Article 1 §§ 6, 8, and 11 of the New York State Constitution.

       3.     Jurisdiction in this matter is founded upon 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the

supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state and local law.

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

5. Plaintiff ROBERT BORRELLI was and is a citizen of the United States and resident of the State of New York. At all relevant times, Plaintiff was and is a Patrol Sergeant in the New York Police Department ("NYPD").

6. Defendant CITY OF NEW YORK ("CITY") was and is a municipality organized and existing under the laws of the State of New York. The NYPD was and is a department, agency or "arm" of the CITY and thus lacks the capacity to be sued herein.

7. At all relevant times, Defendant CITY was and is responsible for the control of the NYPD, its agents and employees, including but not limited to Defendants THOMAS BARRETT, JAMES DODD, and SCOTT OLEXA.

8. At all relevant times, Defendant THOMAS BARRETT was and is a citizen of the State of New York. At all relevant times, he was employed by the CITY and acted under color of law and under color of his authority as an officer, agent, servant, and employee of Defendant CITY. Before retirement, Defendant BARRETT was a Deputy Inspector for the NYPD's 100th Precinct, located in the County of Queens at 92-24 Rockaway Beach Boulevard.

9. At all relevant times, Defendant SCOTT OLEXA was and is a citizen of the State of New York. At all relevant times, he was employed by the CITY and acted under color of law and under color of his authority as an officer, agent, servant, and employee of Defendant CITY.

Defendant OLEXA was a Captain and the Commanding Officer for the NYPD's 100th Precinct, located in the County of Queens, at 92-24 Rockaway Beach Boulevard, before being promoted to Deputy Inspector in the year 2012.

10. At all relevant times,, Defendant JAMES DODD was and is a citizen of the State of New York. At all relevant times, he was employed by the CITY and acted under color of law and under color of his authority as an officer, agent, servant, and employee of Defendant CITY. Defendant DODD is a Lieutenant and Integrity Control Officer for Defendants CITY and NYPD.

## ADMINISTRATIVE PROCEEDINGS AND TIMELINESS

11. On or about August 24, 2012, pursuant to New York General Municipal Law § 50-e (1), Plaintiff caused to be served on municipal Defendants CITY and NYPD timely Notices of Claim.

12. More than thirty (30) days have elapsed since Plaintiff's Notices of Claim were served on Defendants CITY and NYPD. Defendants have neglected or refused to adjust or pay Plaintiff's claims.

13. This action has been commenced within one-year and ninety days after the state law causes of action set forth herein accrued, and within the three-year statute of limitations applicable to federal civil rights actions brought pursuant to 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

14. While acting under color of law and by way of authority and power granted to them by the City, the Defendants, their agents, officers, servants and/or employees, engaged in unlawful conduct by knowingly and intentionally taking adverse employment actions against Plaintiff and retaliating against him for exercising, as a citizen, his First Amendment right to free speech on matters of public concern and denying him procedural due process by such measures,

which include *inter alia*, as: (a) creating a hostile work environment; (b) engaging in reckless, intentionally damaging behavior, stigmatizing Plaintiff from his coworkers; (c) transferring Plaintiff to an assignment further from his home, causing a longer commute and additional expenses; (d) reducing Plaintiff's overtime hours and compensation compared to other identically-situated employees who have not spoken out as citizens on matters of public concern; (e) placing Plaintiff on continuous disciplinary monitoring; (f) denying Plaintiff the right to attend relevant training courses in advancement of his career while granting that right to other identically-situated employees; (g) continually lodging disciplinary charges and specifications against Plaintiff alleging numerous departmental violations in retaliation and without providing the process due to Plaintiff under law.

**A.     Background Information on Police Corruption.**

15.     The NYPD maps crime to identify problem areas through an accountability process known as COMPSTAT.

16.     COMPSTAT tracks the seven major crimes of Murder, Rape, Robbery, Felony Assault, Burglary, Grand Larceny, and Grand Larceny Auto.

17.     Misdemeanors are not counted among the seven major crime categories cited in crime statistics by COMPSTAT.

18.     COMPSTAT obtains data, which includes specific crimes within enforcement areas, from the police boroughs to compile statistical summaries of crime and arrest activity on city wide, borough wide, and precinct wide levels.

19.     A goal of COMPSTAT is to hold NYPD commanders accountable for controlling crime in their boroughs and precincts.

20. In order to avoid being held accountable for a rise in crime in a commander's particular precinct, Defendants, their agents and employees, employed a practice of manipulating crime statistics to give the appearance that crime has decreased.

21. Plaintiff began his employment with the NYPD on or about August 30, 1993.

22. Plaintiff has been employed by Defendants CITY in the NYPD as a Police Officer and/or Sergeant throughout his employment and has been an exemplary employee.

23. As of the date of the instant Complaint, Plaintiff continues to be employed by Defendant CITY and the NYPD.

24. The incidents described and set forth below occurred during Plaintiff's assignments to the 100th Precinct, located in Queens, and the Bronx Court Section located in the Bronx.

25. Plaintiff learned during his tenure of employment and specifically, while at the 100th Precinct, that Defendant CITY, its agents and employees, including, but not limited to, Defendants BARRETT, OLEXA, and DODD, engaged in and continue to engage in a practice of manipulating crime statistics.

26. Defendants manipulate crime statistics, in part, to keep reported crimes low and to falsely illustrate a reduction in the number of felony offenses charged, which is a City wide practice.

27. Defendants, their agents and employees, regularly and routinely downgrade crimes, intentionally classifying these crimes as misdemeanors or violations that should be classified as felonies.

28. Defendants, their agents and employees, intentionally leave out and/or falsify pertinent information in paperwork in order to characterize felonies as misdemeanors or violations.

29. On numerous occasions, beginning in 2008 and continuing, while employed at the 100th precinct, as the Deputy Inspector, Defendant Barrett ordered Plaintiff into his office demanding that Plaintiff justify the classification of felony crimes that he had reported on NYPD issued complaint reports.

30. On numerous occasions, beginning in 2008 and continuing, while employed at the 100th precinct, as the Deputy Inspector, Defendant Barrett and Defendant Olexa, through the chain of command, would order Plaintiff, a subordinate officer, to falsify, change and alter felony crime classifications to misdemeanors or violations.

31. On numerous occasions, beginning in 2008 and continuing, while employed at the 100th precinct, as the Deputy Inspector, Defendant Barrett required various lieutenants from the 100th precinct to question pressure and threaten Plaintiff to change the classification of felony crimes to misdemeanors that he had reported on NYPD issued complaint reports.

32. On numerous occasions, beginning in 2008 and continuing, while employed at the 100th precinct, as the Deputy Inspector, Defendant Barrett would order the Desk Officer, a lieutenant, to change Plaintiff's classification of crimes from felonies to misdemeanors that he reported by changing Plaintiff's submitted complaint reports, without his consent or knowledge.

33. On numerous occasions, beginning in 2011 and continuing, Defendant Dodd, while acting as the 100th precincts Integrity Control Officer ("ICO"), and at the direction of Defendant Olexa, would call Plaintiff into his office to question Plaintiff's submitted complaint

reports, on how Plaintiff classified crimes, and demanded that he change certain complaint reports from felonies to misdemeanors.

34. Because Plaintiff refused to falsify official NYPD documents, Defendant Dodd would often threaten Plaintiff, stating that he would be "watching" Plaintiff and the way that Plaintiff classified crimes on complaint reports.

35. Because Plaintiff refused to alter complaint reports, Defendant Dodd would often scrutinize Plaintiff's actions as a Sergeant and supervisor by constantly requesting to see Plaintiff's memo book in order to find something to write Plaintiff up on.

36. Because Plaintiff refused to alter complaint reports, Defendant Dodd would often accuse Plaintiff of failing to properly perform his duties by accusing him of failing to write complaint reports.

37. As the Commanding Officer of the 100th precinct, beginning in 2011 and continuing, Defendant Olexa ordered Plaintiff's immediate supervisor, a lieutenant, to pressure Plaintiff into changing his crime classifications on his complaint reports from felonies to misdemeanors.

38. Because Plaintiff refused to scrutinize, alter or change complaint reports, Defendant Olexa used his influence as the former commanding officer of Queens South Inspections, to retaliate against Plaintiff by aggressively filing disciplinary charges against Plaintiff.

**B.    Plaintiff's Actions in Response to NYPD Corruption.**

39. In or around May 2011, Plaintiff contacted the department's Internal Affairs Bureau ("IAB") that Defendant Barrett had hidden a felony burglary for a friend in the New York City Fire Department ("FDNY").

40. IAB advised Plaintiff that the manipulation and misclassification of crime stats is not "corruption" and referred the allegations lodged against Defendant Barrett to the NYPD's Quality Assurance Division ("QAD").

41. On or about May 11, 2011, Plaintiff called IAB and speaks with Lieutenant Chris Ally who stated that the allegations are "not corruption, it's a QAD issue."

42. IAB never questioned Plaintiff about pertinent facts concerning the allegations.

43. Because IAB refused to investigate Plaintiff's allegations of corruption, Plaintiff attempted to contact the Chief of IAB, Charles Campisi. Plaintiff spoke to a Detective Gonzalez who advised Plaintiff that her supervisor will call him back, however, no one ever returned his call.

44. Also in or about May 2011, Plaintiff was contacted by Sergeant Napolitano from QAD. Plaintiff informed the Sergeant that Defendant Barrett had been manipulating and misclassifying crime stats for many years, and that he is being singled out and chastised because he refused to engage in such conduct.

45. Plaintiff is advised by Sergeant Napolitano that the original allegation of corruption was being referred back to of IAB.

46. However, Detective Contino and IAB refused to investigate Plaintiff's allegation of corruption and sent the investigation back to QAD.

47. IAB and QAD failed to properly investigate Plaintiff's allegations of corruption.

48. Also, in or around May 2011, Plaintiff contacted the United States Attorney's Office, Southern District of New York concerning corruption within the NYPD. Plaintiff was advised that it is corruption but that the US Attorney's Office does investigate this type of corruption.

49. Because IAB and QAD refused to investigate Plaintiff's claims of corruption, Plaintiff called the NYPD's hotline to report the corruption and was told to call the command center.

50. Plaintiff made several attempts to contact the command center but no one ever answers.

51. Plaintiff also contacted the bureau chief of the Queens County District Attorney's Office, Integrity Unit. Chief Liander returned Plaintiff's call and advised him that the Queens County District Attorney's office would not investigate his allegations but would refer it to IAB.

## C. CITY's Failure to Address the Police Corruption.

52. As discussed directly above, Plaintiff engaged in protected speech numerous times by making complaints through the same channels of communication that are available to ordinary citizens.

53. A policy of inaction was created because the City failed to investigate Plaintiff's claims of corruption or correct the problem.

54. Because the City failed to address Plaintiff's complaints of corruption, he had no choice but to publicize his matters of public concern through the press with interviews with reporters.

55. Specifically, Plaintiff advised these reporters that Defendants manipulated crime statistics by changing or leaving out key facts, dollar amounts, intent of the perpetrator, etc., so that the classification of the crimes would be reclassified from a felony to a misdemeanor.

56. Plaintiff provided the media with copies of complaint reports that were changed and/or revised.

### D. Adverse Employment Actions Taken Against Plaintiff

57. In or around March 2008, Defendant Barrett removed Plaintiff from his position as Conditions Sergeant, a semi-plain clothes detail in an unmarked vehicle with weekends off, a position he held foe 3 ½ years.

58. Beginning in or around March 2008, and occurring to present, Plaintiff's overtime was significantly reduced because he refused to manipulate crime and vehicle statistics.

59. Defendant Barrett has often berated Plaintiff in front of other officers, and has called Plaintiff "[a] thorn in his side."

60. On or about May 6, 2011, the day Plaintiff contacted IAB; Defendant Barrett transferred Plaintiff off of his tour.

61. Plaintiff is routinely denied days off.

62. On or about March 2, 2012, Plaintiff was transferred from the 100th precinct to the Bronx Court Section while out on sick leave.

63. Because of the transfer, Plaintiff's commute almost doubled, his expenses to get to work increase significantly, and he lost seven weeks of night differential.

64. Because of the transfer, Plaintiff is no longer in the holiday chart, thereby losing his days off for every major holiday off, and instead of rotating weekends off his days off are now a steady Tuesday and Wednesday.

65. Disciplinary charges were lodged against Plaintiff for speaking to the media about the ongoing corruption within the 100th precinct.

66. On May 31, 2012, Plaintiff is placed on Level II disciplinary monitoring for cause without being told the cause.

67. On July 2, 2012, disciplinary charges are brought against Plaintiff for allegedly supplying the media with confidential police department documents.

68. Plaintiff has been called a "rat," and his tires were slashed while working at the 100th precinct.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CLAIM
*CONSTITUTIONAL VIOLATIONS*
*42 U.S.C. § 1983*
*First Amendment Right to Free Speech*

69. Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

70. The aforementioned acts of Defendants in creating a hostile work environment, stigmatizing Plaintiff from his coworkers, intentionally taking adverse employment actions against Plaintiff and retaliating against him for exercising his First Amendment right to free speech on matters of public concern, including, transferring Plaintiff to an assignment further from his home, causing a longer commute and additional expenses, reducing Plaintiff's overtime hours and compensation, placing Plaintiff on continuous disciplinary monitoring, denying Plaintiff the right to attend relevant training courses in advancement of his career, continually lodging disciplinary charges and specifications against Plaintiff alleging numerous departmental violations without and other acts of retaliation described above, are a violation of Plaintiff's rights under the First Amendment of the United States Constitution, and 42 U.S.C. § 1983.

71. Plaintiff's reporting of Defendants Barrett, Dodd and Olexa to the NYPD Internal Affairs Bureau, Quality Assurance Division, the United States Attorney's Office, the Queens County District Attorney's Office, and the media is speech protected under the First Amendment as speech by a concerned citizen on a matter of public concern, as Plaintiff was a concerned

citizen at all relevant times mentioned herein, and as Deputy Inspectors and Lieutenant counseling another, subordinate NYPD Officer/Sergeant to lie to, and then threatening to lie to investigators himself, is undoubtedly a matter of public concern.

72. Acting under color of law, in retaliation for Plaintiff's engagement in the aforementioned protected activity, Defendants intentionally took the various adverse employment actions against Plaintiff described above.

73. Acting under color of law, Defendants NYPD and City knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendants Barrett, Dodd and Olexa in their duties to refrain from unlawfully and maliciously retaliating against Plaintiff for engaging in constitutionally protected activities.

74. As a result of the concerted, unlawful and malicious conspiracy of all Defendants, who were acting under color of law, Plaintiff was subjected to various adverse employment actions as described above in retaliation for his engagement in protected activities.

75. As a result of Defendants' aforementioned conduct against Plaintiff, Plaintiff has suffered both economic and non-economic damages including mental anguish, public ridicule, public stigmatization and emotional distress.

**AS AND FOR A SECOND CLAIM**
*CONSTITUTIONAL VIOLATIONS*
*42 U.S.C. § 1983*
*Fourteenth Amendment Due Process Rights*

76. Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

77. Defendants, by and through its employees did, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

subject, or cause to be subjected, Plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, and shall be liable to Plaintiff.

78. As a result of Defendants' acts, Plaintiff was deprived his fundamental liberty and property rights without due process of law under the Fourteenth Amendments of the United States Constitution.

79. Defendants acted with malice or with reckless indifference toward the Plaintiff's federally protected rights by harassing and retaliating against Plaintiff after he exercised said rights.

80. Defendants Barrett, Dodd and Olexa violated Plaintiff's Constitutional rights by denying him substantive due process by engaging in reckless, intentionally damaging behavior, stigmatizing him, creating a hostile work environment, denying Plaintiff career advancement and training opportunities, overtime pay, and vacation leave, and constructively terminating Plaintiff from his position of employment with NYPD.

81. Defendants violated Plaintiff's Constitutional rights by denying him procedural due process by engaging in reckless, intentionally damaging behavior and stigmatizing him and/or providing bias process.

82. As a result of Defendants aforementioned conduct against Plaintiff, Plaintiff has suffered both economic and non-economic damages including mental anguish, public ridicule, public stigmatization and emotional distress.

### AS AND FOR A THIRD CLAIM
*MONELL* CLAIM FOR FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE
42 U.S.C. § 1983
*AGAINST CITY AND NYPD*

83. Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

84. Acting under color of law, Defendant City and its agency, the NYPD did knowingly, recklessly, or with gross negligence failed to train, instruct, supervise, control, and discipline on a continuing basis Defendants Barrett, Dodd and Olexa in their duties to refrain from unlawfully and maliciously retaliating against Plaintiff for engaging in constitutionally protected activities.

85. The inadequate training/supervision was so likely to result in the retaliation that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

86. As a result of Defendants aforementioned conduct against Plaintiff, Plaintiff has suffered both economic and non-economic damages including mental anguish, public ridicule, public stigmatization and emotional distress.

**AS AND FOR A FOURTH CLAIM**
INDIVIDUAL SUPERVISORY LIABILITY
42 U.S.C. §1983
*AGAINST BARRETT, DODD, AND OLEXA*

87. Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

88. Defendants Barrett, Dodd and Olexa, while acting under the color of state law, subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the constitution and laws of the United States by unlawfully participating in and/or permitted the aforementioned unlawful conduct to perpetuate, without abatement in violation of Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. § 1983.

89. Supervisors failed to properly investigate and address allegations of a hostile work environment and claims of retaliation because Plaintiff refused to be part of corruption and complained about said conduct.

90. As a result of Defendants aforementioned conduct against Plaintiff, Plaintiff has suffered both economic and non-economic damages including mental anguish, public ridicule, public stigmatization and emotional distress.

### AS AND FOR A FIFTH CAUSE OF ACTION
CONSTITUTIONAL VIOLATIONS
42 U.S.C. § 1986
*AGAINST BARRETT, DODD, AND OLEXA*

91. Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

92. All of the foregoing wrongful acts committed against Plaintiff by the individual Defendant, Barrett, Dodd and Olexa, while acting under the color of state law, having knowledge of corruption and retaliation, constitutes violations of state and federal laws and violations of Plaintiff's First and Fourteenth Amendment rights. The individual Defendant's negligently and recklessly breached their respective duties under 42 U.S.C. § 1986 to prevent the commission of the civil rights violations perpetuated against Plaintiff, including violations of 42 U.S.C. § 1983, and the substantive and procedural due process violations.

93. The individual Defendants knew or should have known that the retaliatory, adverse actions taken against Plaintiff violated Plaintiff's rights, guaranteed to him under the First and Fourteenth Amendments and 42 U.S.C. §1983.

94. Each of the individual Defendants had the authority, ability and duty under 42 U.S.C. § 1986 to prevent the corruption and retaliation, yet neglected to prevent said violations from occurring, and further failed to intervene to protect Plaintiff when these violations occurred.

95. The individual defendants and each of their failures to stop these wrongful actions constitutes a breach of their duty under 42 U.S.C. § 1986.

96. As a result of Defendants aforementioned conduct against Plaintiff, Plaintiff has suffered both economic and non-economic damages including mental anguish, public ridicule, public stigmatization and emotional distress.

## AS AND FOR A SIXTH CLAIM
NEW YORK STATE CONSTITUTIONAL VIOLATIONS
SUPPLEMENTAL JURISDICTION
*AGAINST BARRETT, DODD, AND OLEXA*

97. Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

98. The acts and omissions of the individual defendants as set forth above were undertaken under color of state law, ordinance, regulation, custom, or usage and operated to deprive Plaintiff of his constitutional right to due process in violation of Article I, Section 6 of the Constitution of the State of New York. Defendants are jointly and severally liable in their individual and/or official capacity.

99. The acts and omissions of the individual defendants as set forth above were undertaken under color of state law, ordinance, regulation, custom, or usage and operated to deprive Plaintiff of his constitutional right to free speech in violation of Article I, Section 8 of the Constitution of the State of New York. Defendants are jointly and severally liable in their individual and/or official capacity.

100. The acts and omissions of the individual defendants as set forth above were undertaken under color of state law, ordinance, regulation, custom, or usage and operated to deprive Plaintiff of his constitutional right to equal protection under the law and to be free of civil rights violations in violation of Article I, Section 11 of the Constitution of the State of New York. Defendants are jointly and severally liable in their individual and/or official capacity.

101. As a result of Defendants aforementioned conduct against Plaintiff, Plaintiff has suffered both economic and non-economic damages including mental anguish, public ridicule, public stigmatization and emotional distress.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
NEW YORK CIVIL SERVICE LAW § 75-b VIOLATION
SUPPLEMENTAL JURISDICTION
*AGAINST CITY, NYPD, BARRETT, DODD, AND OLEXA*

102. Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

103. Defendants took disciplinary and/or other adverse personnel action against Plaintiff, a public employee.

104. Plaintiff disclosed to a governmental body information regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety.

105. Plaintiff did disclose to a governmental body information the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action.

106. Defendants did dismiss or take other disciplinary or other adverse personnel action against Plaintiff, a public employee, regarding his employment, because of these disclosures.

107. Prior to disclosing this information, Plaintiff did make a good faith effort to provide the appointing authority or his or her designee the information to be disclosed and provided the appointing authority or designee a reasonable time to take appropriate action.

108. As a result of Defendants aforementioned conduct against Plaintiff, Plaintiff has suffered both economic and non-economic damages including mental anguish, public ridicule, public stigmatization and emotional distress.

### AS AND FOR A EIGHTH CLAIM
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
SUPPLEMENTAL JURISDICTION
*AGAINST CITY, NYPD, BARRETT, DODD, AND OLEXA*

109. Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

110. Defendants Barrett, Dodd and Olexa, by their actions described herein, exhibited extreme and outrageous conduct towards Plaintiff.

111. In undertaking the aforementioned actions, Defendants intended to cause Plaintiff severe emotional distress.

112. The aforementioned conduct of Defendants has caused Plaintiff severe emotional distress and mental anguish.

113. As a proximate cause of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages.

### DEMAND FOR A JURY TRIAL

114. Plaintiff demands a trial by jury of all issues and claims in this action.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

   a) Preliminary and permanent injunctions against Defendants, their officers, owners, agents, successors, employees, representatives, and any and all person acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

   b) Judgment declaring that the practices complaint of herein are unlawful and in violation of the aforementioned laws protected by the United States and New York State Constitutions;

  c)  An Order restraining Defendants from any retaliation against Plaintiff, in any form, for his participation in the instant action;

  d)  Money damages Plaintiff sustained as a result of Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and job benefits Plaintiff would have received but for Defendants' unlawful conduct, as well as money damages for emotional distress, humiliation, embarrassment, and loss of career opportunities;

  e)  Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future, malicious, reckless, and/or intentional conduct;

  f)  Costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees, and other costs; and,

  g)  Other and further relief that this Court deems necessary and proper.

Dated: May 29, 2013
   Great Neck, New York

              Respectfully,

              THE LAW OFFICE OF
              BORRELLI & ASSOCIATES, P.L.L.C.
              *Attorneys for Plaintiff*
              1010 Northern Boulevard, Suite 328
              Great Neck, NY 11021
              (516) 248-5550

              _____
              PETER J. FAMIGHETTI (PJF 4064)
              MICHAEL J. BORRELLI (MB 8533)